UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY SCHMIDT,                                   Case No. 16-10543

              Plaintiff,                    John Corbett O'Meara
v.                                              United States District Judge

CAROLYN W. COLVIN,                              Stephanie Dawkins Davis
Acting Commissioner of the                      United States Magistrate Judge
SOCIAL SECURITY ADMINISTRATION,

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On February 15, 2016, plaintiff filed the instant suit seeking judicial review of the portion of the Commissioner's decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to the undersigned for the purpose of reviewing the portion of the Commissioner's decision denying plaintiff's claims.  (Dkt. 2).  On June 28, 2016, plaintiff filed his motion for summary judgment.  (Dkt. 15).  On September 26, 2016, the Commissioner filed its motion for summary judgment.  (Dkt. 14).  The matter is now ready for report

and recommendation.

    B.    <u>Administrative Proceedings</u>

On October 29, 2013, plaintiff protectively filed an application for supplemental security income, alleging a disability beginning April 30, 2012. (Dkt. 9-5, Pg ID 220-225). The Commissioner initially denied plaintiff's application on June 10, 2014. (Dkt. 9-4, Pg ID 164-167). Thereafter, plaintiff requested an administrative hearing, and on July 7, 2015, he appeared with counsel before Administrative Law Judge ("ALJ") Stephen Marchioro, who considered his case *de novo*. (Dkt. 9-2, Pg ID 58-127). In an October 9, 2015 decision, the ALJ determined that plaintiff was disabled under § 1614(a)(3)(A) of the Social Security Act, from October 29, 2013, through March 3, 2015. (Dkt. 9-2, Pg ID 37-53). The ALJ further determined, however, that plaintiff's disability ended on March 4, 2015, and that plaintiff could make a successful adjustment to work beginning on that date. (Dkt. 9-2, Pg ID 52). Plaintiff requested a review of the ALJ's decision that plaintiff's disability ended on March 4, 2015; however the ALJ's decision became the final decision of the Commissioner when, the Appeals Council on January 7, 2016, denied plaintiff's request for review. (Dkt. 9-2, Pg ID 27-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). Plaintiff filed this suit on February 16, 2016, arguing that the ALJ erred when he concluded that his disability ended on March 4, 2015. (Dkt. 1).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED.**

## II.   FACTUAL BACKGROUND

Plaintiff's claim for disability is based on his claims of degenerative disk disease, bilateral shoulder impingement, obesity, obstructive sleep apnea, hypertension, depression, anxiety, and attention deficit/hyperactivity disorder (ADHD).  (Dkt. 9-2 Pg ID 40).  At the time of the administrative hearing, plaintiff was 43 years old.  (Dkt. 9-2, Pg ID 68).  Plaintiff has at least a high school education and is able to communicate in English.  (*Id*.)  Plaintiff had previously worked as a taxidermist, and as a construction worker.  (Dkt. 9-2, Pg ID 45).  Plaintiff has a thirteen year old daughter who lives with him on a part-time basis.  (Dkt. 9-2, Pg ID 68-69).

### A.   ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff has not engaged in any substantial gainful activity since October 29, 2013, the date plaintiff became disabled.  (Dkt. 9-2, Pg ID 40).  At step two, the ALJ found that from October 29, 2013 through March 3, 2015, the period during which the plaintiff was under a disability, plaintiff had the

following severe impairments: degenerative disc disease, bilateral shoulder impingement, obesity, obstructive sleep apnea, hypertension, depression, anxiety, and attention deficit/hyperactivity disorder (ADHD).  (Dkt. 9-2, Pg ID 40).  At step three, the ALJ found that from October 29, 2013, through March 3, 2015, the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Dkt. 9-2, Pg ID 41).

The ALJ determined that from October 29, 2013, through March 3, 2015, the plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 416.967(a) except he was limited to work that allowed him to alternate between sitting and standing. Specifically, the claimant could have sat for 60 minutes, at which time he would have had to stand for approximately 20 minutes while remaining at the workstation. He could have only occasionally operated foot controls bilaterally. The claimant could never have climbed ladders, ropes, or scaffolds, and could never have crawled. He could occasionally have climbed ramps and stairs, balanced, stooped, knelt, and crouched. He could never have been exposed to excessive vibration from industrial vibrating tools. He should have avoided all exposure to unguarded moving mechanical parts and all exposure to unprotected heights. The claimant was limited to simple and routine tasks with only occasional interaction with coworkers and the general public and only occasional supervision. Due to his medical conditions, he would have been off-task 20% of the workday.

(Dkt. 9-2, Pg ID 41).  From October 29, 2013, through March 3, 2015, the plaintiff

4

was unable to perform any past relevant work.  (Dkt. 9-2, Pg ID 45).  The ALJ also

concluded that from October 29, 2013, through March 3, 2015, considering

plaintiff's age, education, work experience, and RFC, there were no jobs that

existed in significant numbers in the national economy that the plaintiff could

have performed.  (*Id*.)  As such, the ALJ determined that plaintiff was under a

disability, as defined by the Social Security Act, from October 29, 2013, through

March 3, 2015.  (*Id*. at 46).

When an ALJ determines that a claimant is disabled, he "must determine if

there has been any medical improvement in [the claimant's] impairment(s) and, if

so, whether this medical improvement is related to [the claimant's] ability to

work."[1]  20 C.F.R. § 416.994(b).  As such, the ALJ determined that as of March 4,

2015, plaintiff had the same set of severe impairments, and still did not have an

impairment or combination of impairments that met or medically equaled one of

the listings.  (Dkt. 9-2, Pg ID 46).  The ALJ determined that medical improvement

occurred as of March 4, 2015, the date the plaintiff's disability ended.  (Dkt. 9-2,

Pg ID 48).  The medical improvement that occurred was related to the ability to

work because, according to the ALJ, there was an increase in the plaintiff's RFC.

(Dkt. 9-2, Pg ID 49).

---

[1]  The Commissioner determines medical improvement by undertaking an eight-step
sequential evaluation that largely mirrors the traditional five-step sequential evaluation.  20
C.F.R. § 416.994(b)(5)(i)-(viii).

The ALJ concluded that beginning March 4, 2015, plaintiff had the residual

functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 416.967(a) except
> he is limited to work that allows him to alternate between
> sitting and standing. Specifically, the claimant can sit for
> 60 minutes, at which time he would have to stand for
> approximately 20 minutes while remaining at the
> workstation. He can only occasionally operate foot
> controls bilaterally. The claimant can never climb
> ladders, ropes, or scaffolds, and can never crawl. He can
> occasionally climb ramps and stairs, balance, stoop,
> kneel, and crouch. He can never be exposed to excessive
> vibration from industrial vibrating tools. He should avoid
> all exposure to unguarded moving mechanical parts and
> all exposure to unprotected heights. The claimant is
> limited to simple and routine tasks with only occasional
> interaction with coworkers and the general public and
> only occasional supervision.

(Dkt. 9-2, Pg ID 49).  The ALJ determined that plaintiff was not capable of

performing any past relevant work.  (Dkt 9-2, Pg ID 62).  Finally, the ALJ

concluded that beginning March 4, 2015, considering plaintiff's age, education,

work experience and RFC, there were jobs that existed in significant numbers in

the national economy that plaintiff could perform, and that plaintiff's disability

ended on March 4, 2015.  (Dkt. 9-2, Pg ID 52).

B.    Plaintiff's Claims of Error

Plaintiff is appealing from that portion of the ALJ's decision that denied

him benefits from March 4, 2015 forward.  Plaintiff claims that the medical

6

evidence shows that his limitations did not change significantly on March 4, 2015 such that the ALJ had substantial evidence to limit his benefits award.  Plaintiff argues that the medical summary shows significant findings of lumbar radiculopathy, cervical radiculopathy, pain, and significant depressive emotional condition.  This evidence, coupled with his testimony, are consistent with his treater's opinions that he would be off-task more than twenty percent of the time in a sedentary job, or would miss more than two days of work per month.  Plaintiff argues that there is no objective evidence in the record after March 4, 2015 to suggest that his impairments on an ongoing basis would be less severe.  Indeed, opinions of treating physicians should be accorded greater weight.  *Walter v Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997).  Plaintiff says that his treating physicians' opinions must be accorded controlling weight if the Commissioner finds: 1) that the opinion is well supported by objective medical evidence with the acceptable clinical and laboratory diagnostic testing; and 2) that the opinion is not inconsistent with other substantial evidence in the case record.  *Gayheart v Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).  Because the ALJ did not properly weigh the opinions of his treating physicians, plaintiff claims reversible error.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner first argues that substantial evidence supports the ALJ's

determination that plaintiff experienced medical improvement on March 4, 2015.
The Commissioner indicates that when evaluating whether there has been a
medical improvement based on changes in a claimant's symptoms, signs, and/or
laboratory findings, the ALJ must compare the current severity of the claimant's
medical impairment with the claimant's impairments at the time of the favorable
decision. *See Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460,
at *5 (E.D. Mich. June 1, 2011). In cases where the ALJ has awarded a closed
period of disability benefits "the established onset date [is used] as the comparison
point." Program Operation Manual System (POMS) DI 28010.105(3)(a), available
at SSA POMS DI 28010.105. Therefore, in this case, the comparison date is
October 29, 2013. The second question is whether "there has been a decrease in
the severity of the impairment(s) since the favorable decision, [and] whether that
has resulted in an increase in [the claimant's] functional capacity to do basic work
activities. An increase in the claimant's functional capacity will lead to a cessation
of benefits only if, as a result, the claimant can perform his or her past work or
other work for which there exists significant numbers in the national community."
*Campbell*, 2011 WL 2160460, at *5 (citations omitted).

　　Based on this standard, the Commissioner argues that the ALJ satisfied the
first prong of the analysis because substantial evidence supports his conclusion
that plaintiff's limitations lessened after October 29, 2013, and that plaintiff

experienced medical improvement on March 4, 2015.  To support this conclusion, the ALJ noted that plaintiff stated that on March 3, 2015, his pain all but disappeared with medication (Tr. 480) and, save a visit in April 2015 in which he indicated back pain (Tr. 499), he nevertheless appeared to be in no acute distress (Tr. 501), and then completely stopped treatment for his physical impairments.

In light of the above, the ALJ's decision also passes the second part of the test, as the record shows that, as of March 4, 2015, plaintiff's physical impairments no longer caused the disabling functional limitation of being off-task for twenty percent of the workday.  According to the Commissioner, plaintiff is incorrect that the ALJ concluded that his severe limitations "had lifted."  Rather, the ALJ concluded that plaintiff had the same set of severe limitations both before and after March 4, 2015.  The ALJ, though, determined that plaintiff's impairments resulted in less functional limitations as of March 4, 2015 because a March 3, 2014 medical note stated that the pain caused by those impairments was largely under control.  (Tr. 22, *citing* Pg ID 479-480).

Plaintiff's argument that the ALJ's failure to give greater weight to an examining physician's opinion that occurred prior to the onset date lacks support according to the Commissioner and should be deemed waived.  *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that [i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

9

argumentation, are deemed waived, and that [i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones") (citations and punctuation omitted).  The Commissioner assumes that plaintiff is referring to the opinion of psychological consultative examiner, Dr. Nathalie Menendes, who offered an opinion of plaintiff's mental functioning in April 2010.  (Tr. 17; citing Tr. 276-280).  But, the ALJ only gave great weight to that determination for the period in conjunction with his determination that plaintiff was disabled–from the alleged onset date to March 4, 2015.  In this same regard, plaintiff attempts to discredit the ALJ's decision saying that he did not properly credit his treating doctors, Dr. Adams (neurosurgeon), and Dr. Saperstein (pain management).  However, plaintiff "bears the burden of showing that the ALJ's decision is unsupported by substantial evidence" and absent from his brief is any discussion regarding how the ALJ committed error vis-à-vis any of these doctors' findings.  *Everman v. Comm'r of Soc. Sec.*, No. 13-12762, 2016 WL 4942036, at *5 (E.D. Mich. Aug. 22, 2016), *report and recommendation adopted*, 2016 WL 4917556 (E.D. Mich. Sept. 15, 2016). Therefore, according to the Commissioner, this argument is waived. *Robinson*, 390 F.3d at 886.

Plaintiff also contends that the medical records suggest that his depressive condition had increased and was more severe at the time of the hearing in 2015.

10

However, the Commissioner points out that plaintiff's most recent medical records, dated April 13, 2015, showed that he was doing "okay" and aside from being "slightly depressed" and having a "blunted" affect–that he had a largely normal mental status examination.  (Dkt. 9-7, Pg ID 560).  Additionally, there were no additional treatment notes in the record between plaintiff's April 2015 visit at the ALJ's decision.

The Commissioner finally argues that the ALJ was not required to solicit the opinion of a medical source after March 4, 2015 in order to render his decision. Indeed, ALJ's can make commonsense judgments about a claimant's condition without a doctor's assistance.  *Spuhler v. Colvin*, 2014 WL 4855743, at *19 (E.D. Mich. June 17, 2014) *report and recommendation adopted in part*, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014) (citations omitted).  That is especially true when, as here, plaintiff testified about his medical improvement with medication.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial

11

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability.");

12

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

      "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

16

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

        As noted above, when an ALJ finds that a claimant is disabled, he "must

determine if there has been any medical improvement in [the claimant's]

impairment(s) and, if so, whether this medical improvement is related to [the

claimant's] ability to work."  20 C.F.R. § 416.994(b).  The Commissioner

determines medical improvement through an eight-step sequential evaluation that

largely mirrors the traditional five-step sequential evaluation.  20 CFR §

416.994(b)(5)(i)-(viii).

        If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

1.   *Medical Improvement*

After determining that plaintiff was entitled to a closed period of disability,

due to a medical improvement related to his ability to work, the ALJ determined

that beginning April 4, 2015, plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a)
> except he is limited to work that allows him to alternate
> between sitting and standing. Specifically, the claimant
> can sit for 60 minutes, at which time he would have to
> stand for approximately 20 minutes while remaining at
> the workstation. He can only occasionally operate foot
> controls bilaterally. The claimant can never climb
> ladders, ropes, or scaffolds, and can never crawl. He can
> occasionally climb ramps and stairs, balance, stoop,
> kneel, and crouch. He can never be exposed to excessive
> vibration from industrial vibrating tools. He should avoid
> all exposure to unguarded moving mechanical parts and
> all exposure to unprotected heights. The claimant is
> limited to simple and routine tasks with only occasional
> interaction with coworkers and the general public and
> only occasional supervision.

(Dkt. 9-2; Pg ID 49).  The ALJ further concluded that despite his medical

improvements, plaintiff was still unable to perform his past relevant work.  (*Id*. at

51).  However, beginning March 4, 2015, considering plaintiff's age, education,

work experience, and modified RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that the plaintiff could

perform.  (*Id*. at 52).  As such, the ALJ concluded that plaintiff's disability ended on March 4, 2015.  (*Id*. at 53).  Plaintiff challenges this conclusion.

The Sixth Circuit has set forth a two-part inquiry to determine whether a claimant has experienced a medical improvement.  First, a court needs to determine whether there is medical improvement "'based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s).'"  *Kennedy v. Astrue*, 247 Fed. Appx. 761, 764-765 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1594(b)(1)(i)).  This determination is made by comparing the current severity of the plaintiff's medical impairment(s) with the plaintiff's medical impairment(s) at the time of the favorable decision (otherwise known as the "point of comparison").  *See* 20 § C.F.R. 416.994(b)(vii). The "point of comparison"  relevant to this inquiry is plaintiff's disability onset date.  *See Booms v. Comm'r of Soc. Sec.*, 277 F.Supp. 739, 745 (E.D. Mich. 2003); 20 C.F.R. 416.994(b)(1)(i) (improvement is measured from "the most recent favorable decision" that the claimant was disabled.)  The second inquiry is whether there has been a decrease in the severity of plaintiff's impairment(s) since the point of comparison, such that plaintiff's functional capacity to do basic work activities has increased.  *Kennedy*, 247 Fed. Appx. at 765.  However, it is important to note that a cessation of benefits will only result where it can be shown that plaintiff can perform his or her past work, or other work for which

there exists significant numbers in the national economy.  20 C.F.R.

§§ 404.1594(f)(7), (8).

Here, the undersigned agrees with the Commissioner that the "point of

comparison" in this case is October 29, 2013, or the date that claimant alleged he

was disabled.  *See* 20 § C.F.R. 416.994(b)(vii).  For the following reasons, the

undersigned also concludes that substantial evidence supports the ALJ's

conclusion that a medical improvement occurred as of March 4, 2015.

In concluding that plaintiff's disability ended on March 4, 2015, the ALJ

noted:

> Following the claimant's spinal surgery in 2014,
> treatment records show improving physical examination
> findings. The claimant often had no lumbar, cervical, or
> thoracic spine tenderness. There was no facet tenderness.
> The claimant had full range of motion in his cervical and
> lumbar spine. Straight leg raising was negative. There
> was no muscle wasting, edema, or cyanosis. Deep tendon
> reflexes were intact and symmetrical. In March 2015, the
> claimant reported he almost forgets he has pain when
> taking his medication. He reported adequate pain relief
> increased functional abilities, and increased activities of
> daily living with treatment. His neurosurgeon noted the
> claimant's herniated nucleus pulposus was resolved.

(Dkt. 9-2, Pg ID 48; *citing* Exs. 9F, 11F, 12F).  The ALJ further noted the

evidence that supported his conclusion that the medical improvement that

occurred was related to plaintiff's ability to work because there had been an

increase in plaintiff's RFC.  (Dkt. 9-2, Pg ID 49).  In support of the modified RFC,

the ALJ noted that in terms of plaintiff's alleged back, shoulder and neck problems, the medical records confirm that plaintiff's condition improved significantly following lumbar surgery. (*Id*.) Specifically, on examination, plaintiff occasionally had para-spinal muscle tenderness to palpitation in his lumbar spine, but he often had no lumbar, cervical, or thoracic spine tenderness. (*Id*.) Post-surgery, plaintiff also experienced a full range of motion in his hips, though a somewhat decreased range of motion in his cervical and lumbar spine. Other medical evidence showed no dislocation, subluxation, or laxity. There was no facet joint or sacroiliac tenderness. Straight leg raising was negative and a Spurling's test was likewise negative.  The ALJ also noted there was no muscle wasting, edema, or cyanosis.  Medical notes from the relevant period noted that plaintiff's strength was 5/5 throughout.  Deep tendon reflexes were intact and symmetrical.  Plaintiff's doctors noted that overall his shoulders, elbows, and wrists were stable.  A Romberg test was also negative.  The plaintiff was able to ambulate with a normal gait and had good posture.  The ALJ noted that while plaintiff had some difficulty with heel and toe walking and tandem walking, his respiration was normal. The plaintiff had intact fine motor movement and his sensation was intact.

Importantly, the plaintiff also received facet joint injections with some relief of his pain.  Plaintiff was also taking Fentanyl and Morphine for pain.  Plaintiff

21

reported adequate pain relief and improved functional activities as well as increased activities of daily living with the injections and pain medication. (Dkt. 9-2, Pg ID 49-50). Plaintiff denied experiencing any side effects from these medications. (*Id.*; *citing* Tr. 9F, 11F, 12F, 14F). The ALJ determined that these findings were not consistent with plaintiff's hearing testimony of disabling symptoms, but rather supported the limitations in his modified RFC of sedentary work with the additional limitations indicated.

The ALJ additionally determined that plaintiff's mental impairments and symptoms remained the same as during the closed period of disability. (Dkt. 9-2, Pg ID 50). To support this conclusion, the ALJ relied on plaintiff having good contact with reality during his mental status examinations. He made good eye contact and was cooperative. Plaintiff had fair to good insight. Plaintiff denied hallucinations, delusions, unusual thought content, and suicidal ideation. He was generally oriented to time, place and person. His affect was flat or blunted. His mood was often depressed. The ALJ noted good memory and that plaintiff's judgment and abstract thinking skills were intact. The ALJ also indicated that plaintiff took Cymbalta and Wellbutrin for his mental impairments. Based on the above, the ALJ determined that plaintiff had no more than moderate difficulties in social functioning, and in concentration, persistence, or pace. (Dkt. 9-2, Pg ID 50). These limitations were reflected in the RFC by limiting plaintiff to simple,

22

routine tasks, with only occasional supervision, and only occasional interaction with coworkers and the general public.  (*Id*.)

Plaintiff also argues that the ALJ erred when he did not elicit the opinion of a consulting physician to support his conclusion that plaintiff's condition had improved; however, it is well-settled that ALJs can make commonsense judgments about a claimant's condition without a physician's assistance.  *Spuhler v. Colvin*, 2014 WL 4855743, at *19 (E.D. Mich. June 17, 2014), *report and recommendation adopted in part*, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014) (citations omitted).  As the Commissioner argued, this court agrees that this is especially true in cases like this one where the plaintiff has acknowledged a medical improvement and has made affirmative statements that he can "almost forget his pain [was] there" when taking his prescribed medication(s).  (Dkt. 9-7, Pg ID 511).  Importantly, the court also notes that the substantial medical evidence in the record supports the ALJ's conclusion that plaintiff's condition had improved on March 4, 2015.  *See, e.g.*, Exs. 9F, 11F, 14F (records of plaintiff's improved medical condition).  Indeed, save a visit in April 2015 in which he indicated back pain (Dkt. 9-7; Pg ID 530), he nevertheless appeared to be in no acute distress (*Id*. at 532), and then appears to have completely stopped treatment for his physical impairments.  Likewise, plaintiff's most recent mental health records show that he was doing "okay" and—aside from being "slightly

23

depressed" and having a "blunted" affect—he had a largely normal mental status examination.  (Dkt. 9-7; Pg ID 529).  Following this treatment note, there do not appear to be any additional records before the administrative hearing.

Plaintiff attempts to argue that the ALJ should have given greater weight to his treating examiners' opinions that were offered before the onset of the disability period than to those who only examined him only once; however, plaintiff makes no effort to flesh out this argument.  In this court, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *See McPherson v. Kelsey*, 125, F.3d a 989, 995-96 (6th Cir. 1997).  Notwithstanding, to the extent that plaintiff is referring to the manner in which the ALJ weighed the opinion evidence of Dr. Nathalie Menendes, a psychological consulting examiner who offered an opinion on plaintiff's mental functioning in April 2010, the ALJ explicitly indicated that he was only giving great weight to that opinion in conjunction with his determination that plaintiff was disabled for the closed period.  (Dkt. 9-2, Pg ID 43) ("The undersigned gives great weight to this opinion for the period from the alleged onset date to March 4, 2015.").

For all of the above reasons, the court concludes that substantial evidence supports the ALJ's conclusion that plaintiff experienced medical improvement on March 4, 2015.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

25

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: February 16, 2017                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 16, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov